# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENVILLE DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

        v.                           CASE NO: 2:18-CR-0017

**EDWARD UTHE,**

        Defendant**.**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS ONE, TWENTY-FOUR AND THIRTY OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE

Mr. Uthe respectfully files the following Memorandum of Law in Support of his Motion to Dismiss Counts One, Twenty-Four and Thirty of the Indictment for Failure to State an Offense[1].

Count One of the Indictment alleges that from "on or about on or about January 1, 2016, and continuing to on or about January 9, 2018, within the Eastern District of Tennessee *and elsewhere*" Mr. Uthe engaged in a single conspiracy with over 40 co-conspirators to distribute 50 grams or more of methamphetamine. (Doc. 3, p. 2-4 (emphasis added)).  Count Thirty of the Indictment alleges that "from in or about January 1, 2016, and continuing to on or about January 9, 2018, within the Eastern District of Tennessee, *and elsewhere*" Mr. Uthe and the same co-conspirators engaged in a single conspiracy to conduct financial transactions to promote the distribution of methamphetamine, knowing that the property involved in the transactions represented

---

[1] Mr. Uthe has previously filed motions to dismiss for lack of specificity under Fed. R. Crim. P. 12(b)(3)(B)(iii) and for duplicity under Fed. R. Crim. P. 12 (b)(3)(B)(i).  As those motions are still pending, Mr. Uthe also files this Memorandum of Law in support of those motions to the extent that the arguments set forth herein are relevant to the decision on those motions.

proceeds from unlawful activity. (Doc. 3, p. 17-19 (emphasis added)). County Twenty-Four of the Indictment alleges that:

> The Grand Jury further charges that on or about September 15, 2016, within the Eastern District of Tennessee, the defendant, EDWARD UTHE also known as "Tattoo," did knowingly possess a firearm in furtherance of the drug trafficking offense as charged in Count One, in violation of Title 21, United States Code, Section 841(a)(1), which is hereby incorporated by reference.

(Doc. 3, p. 15).

None of these counts allege any specific conduct in regard to Mr. Uthe or any specific facts that make criminal liability even remotely plausible. Instead, the counts are merely conclusory allegations that simply quote the statutory language. As such the Indictment fails to give Mr. Uthe constitutionally adequate notice and lacks specificity and fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v).

## LEGAL STANDARD

The Indictment fails to give Mr. Uthe constitutionally adequate notice of the charges against him, lacks specificity and fails to state an offense.

### I. *Constitutional Requirements:*

The Constitution guarantees a criminal defendant the right to indictment by Grand Jury. U.S. Const. Amend. V. As the Sixth Circuit has noted, the right to indictment by Grand Jury "also protects two other constitutional rights—the Sixth Amendment right to fair notice of the criminal charges against a defendant and the Fifth Amendment's protection against twice placing a defendant in jeopardy for the same offense." *U.S. v. Smith*, 749 F.3d 465, 481 (6th Cir. 2014) (citations and quotations omitted). Additionally, the Fifth Amendment guarantees a criminal defendant the right to Due Process and the Sixth Amendment guarantees the right to the effective

assistance of counsel. U.S. Const. Amend. V, U.S. Const. Amend. VI. See generally, *Russell v. United States*, 369 U.S. 749, 760-1, 763-64 (1962).

As the Sixth Circuit has stated[2]:

> The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. **For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.**

*Valentine v. Konteh*, 395 F.3d 626, 631 n. 1 (6th Cir. 2005) (emphasis added), quoting *U.S. v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588 (1875).

The Sixth Circuit has, therefore, held that "an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Valentine*, 395 F.3d. at 631.

When an offense is defined in general terms, the Supreme Court has held that "it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *Russell*, 369 U.S. at 765 (citations omitted). Thus, "[w]here guilt depends so crucially upon such *a specific identification of fact* ... an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764 (emphasis added). As such, under clearly established United States Supreme Court precedent, it must be pled with specificity. *Id.* See also *Hamling v. United States*, 418 US 87, 118-119 (1974) (distinguishing between statutory terms that involve questions of fact and those that in-

---

[2] This statement is not only a direct quote from a U.S. Supreme Court case, but was arguably central to the holding of *Valentine*.

volve legal terms of art and holding that indictment is not insufficient, if it fails to allege specific facts supporting legal term of art). The reason for this is self-evident, because when an offense is fact specific, failure to specify the facts leaves "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell*, 369 U.S. at 768. Thus, although the statute may be used in the general description of the offense, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117-18, quoting *United States v. Hess*, 124 U. S. 483, 487 (1888).

This is consistent with Sixth Circuit precedent, which requires that the recitation of statutory language in an indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007), quoting *United States v. Superior Growers Supply*, Inc., 982 F.2d 173, 176 (6th Cir. 1992). For instance, in *U.S. v. Salisbury*, the Sixth Circuit dismissed a much more specific indictment than the indictment at issue here for failing to provide adequate notice to the defendant:

> The factual basis of the indictment in the instant case consisted of a litany of actions which purportedly constituted "voting more than once." None of the listed actions, however, clearly exemplifies multiple voting. For instance, the indictment enumerates, in specific detail, the following actions: 1) the co-defendants caused a third party to punch holes in the ballot of an absentee voter without his "active participation"; 2) defendant Salisbury "caused" a Democrat to apply for a Republican absentee ballot; 3) defendant Salisbury "voted" the ballots of absentee voters without their permission; 4) defendants, on several occasions, instructed an absentee voter to punch a certain set of holes on his absentee ballot without allowing him to identify the corresponding candidates; and 5) defendant "voted" an absentee ballot on behalf of a person she knew was no longer a resident of Pike County.

> The indictment, like the statute, does not set forth a clear and unambiguous definition of the term "vote" or the phrase "voting more than once." It also does not describe which of Salisbury's activities specifically constitutes "voting" or "voting more than once." For example, Salisbury's actions, such as reading candidates' names aloud to an absentee voter while the absentee voter physically punched the holes on the ballot and signed the form, do not seem to comport with our common understanding of what constitutes voting. We note that the indictment does not even clearly allege that Salisbury voted on her own behalf. Thus, we hold that count two of the indictment, even in the context of the entire indictment, fails to adequately notify the defendant of the specific occurrences which constituted the charge against her.

*U.S. v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

Here the indictment fails to allege any facts and circumstances at all in regard to Mr. Uthe.

**A.   Conspiracy**

As the Sixth Circuit has noted, "there is probably no crime an exact definition of which it is more difficult to give than the offense of conspiracy." *U.S. v. Bostic*, 480 F. 2d 965, 968 (6th Cir. 1973). The Sixth Circuit has also recognized "the Supreme Court's long-standing admonition that 'charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning ... a dragnet to draw in all substantive crimes.'" *U.S. v. Swafford*, 512 F.3d 833, 8413 (6th Cir. 2008), quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943).

> The unlawful combination being the gist of the conspiracy, it follows that there must be an agreement of some kind willingly entered into by the parties to it. There must be unity of design or purpose, a concert of will and endeavor, comprising what has been agreed to.
>
> Mere knowledge or approval, without participation, does not make one a party to a conspiracy. Mere association does not establish a conspiracy, but there must be intentional participation in the transaction with a view to the furtherance of the common design and purpose. If, in Judge Learned Hand's well-known phrase, a man is to be held for joining others in a conspiracy, "he must in some sense promote their venture himself, make it his own, have a stake in its outcome. The distinction is especially important today when so

many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders. That there are opportunities of great oppression in such a doctrine is very plain, and it is only by circumscribing the scope of such all comprehensive indictments that they can be avoided."

*Bostic*, 480 F. 2d at 968, quoting *United States v. Falcone*, 109 F.2d 579, 581 (2nd Cir. 1940).

A conspiracy requires a common enterprise and the common enterprise defines the scope of the conspiracy. *U.S. v. Gibbs*, 182 F. 3d 408, 421-3 (6th Cir. 2008). See also e.g., *U.S. v. Richardson*, 130 F. 3d 765, 773 (7th Cir. 1997) ("The scope of the conspiracy is determined by the scope of the agreement between the defendants."). As held by the Sixth Circuit, "while a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy does not know every other member, it is necessary to show that each alleged member 'agreed to participate in what he knew to be a collective venture directed toward a common goal." *U.S. v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) (internal citations and quotations omitted). Moreover, in a reported and therefore binding decision, the Sixth Circuit has held:

> Defining the common enterprise as simply the illegal sale of drugs would render the conspiracy an essentially limitless enterprise. Additional facts must connect the putative co-conspirators.

*Swafford*, 512 F.3d at 842 n. 3.

Under Sixth Circuit precedent, "[a] buyer/seller relationship alone is not enough to establish participation in the conspiracy, but further evidence indicating knowledge of and participation in the conspiracy can be enough to link the defendant to the conspiracy." *Gibbs*, 182 F. 3d at 421-22. However, "mere association with conspirators is not enough to establish participation in a conspiracy." *Id.* at 422, quoting *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir.1990). The Sixth Circuit has noted that "[t]he distinction is especially important today when so many prose-

cutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders." *Gibbs*, 182 F. 3d at 422.

*United States v. Gibbs* is instructive. In that case the conspiratorial agreement consisted of an "agreement to exclude non-resident drug dealers from selling in the Short North" *Id.* The importance of the agreement is illustrated by the Sixth Circuit's holding that:

> With respect to the other six defendants, the government's evidence proved simply that these defendants independently sold a lot of drugs. Some bought from each other. Others, though acting independently, associated with each other. Nowhere do we see evidence that any specific defendant agreed to participate in the conspiracy to exclude outsiders so as to further the drug sales of insiders.

*Id.* at 423.

In other words, it was not enough that the defendants sold drugs or even that they sold to each other, because the agreement was to exclude outsiders from sales in the Short North. *Id.* The limitation in the indictment allowed the court to determine whether the evidence was sufficient to prove the charge. A failure to define the agreement therefore is precisely the type of evil identified by the Supreme Court in *Russell*:

> The vice which inheres in the failure of an indictment [] to identify the subject under inquiry is thus the violation of the basic principle "that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, . . ." *United States v. Simmons*, supra, at 362. A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined. It enables his conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture.

*Russell*, 369 US at 766.

The Indictment in this case contains general allegations of conspiracy to distribute drugs and launder money. (Doc. 3, p. 2-4, 17-19). The Indictment, however, fails to identify the com-

Page 7 of 17
Case 2:18-cr-00017-RLJ-CRW   Document 626   Filed 10/03/18   Page 7 of 17   PageID #: 2775

mon enterprise or what facts connect the putative co-conspirators. E.g., *Russell*, 369 US at 764, 766; *Hamling*, 418 U.S. at 117-18. See also e.g., *Swafford,* 512 F.3d at 842. The indictment fails to allege any specific facts in regard to Mr. Uthe and it is notable that although multiple alleged conspirators have pled guilty, the factual stipulations in their plea agreements fail to allege any facts in regard to Mr. Uthe, much less an agreement.

Because the common enterprise element of a conspiracy charge is a question of fact, Mr. Uthe is entitled to notice of it in the Indictment. See e.g., *Id.* This is consistent with Sixth Circuit precedent. For instance, as noted above, in *U.S. v. Salisbury*, the Sixth Circuit dismissed a much more specific indictment for failing to provide adequate notice to the defendant. *Salisbury*, 983 F. 2d at 1375. The Sixth Circuit has also held that the government may not plead an essentially limitless enterprise to sell drugs. *Swafford*, 512 F.3d at 842 n. 3.

In its response to Mr. Uthe's Motion to dismiss the indictment on the grounds of duplicity (Doc. 432), the government states that the government "will prove a common goal among the charged co-conspirators (the repeated collection of funds used to purchase methamphetamine which was then transported to the Eastern District of Tennessee and sold)." (Doc. 447). There are two problems with this statement. The first is that it is not set forth in the indictment and, therefore, not binding on the government and the second is that it is vague.

The statement is vague, because it admits of two different interpretations. It could be that the government defines the conspiracy as the purchase and sale of illegal drugs, which is exactly the type of limitless enterprise forbidden in *Swafford* and condemned in *Russell,* because it allows the prosecution to "roam at large" and its generality will allow the government to succeed on virtually any theory of liability (and to shift its arguments in regard to the same). Because the

common enterprise is the chief issue in a conspiracy case and defines the scope of the defendant's criminal liability, a cryptic indictment which fails to specify the common enterprise in any but the most general terms leaves the chief issue undefined, effectively making the defendant's criminal liability limitless. It is, therefore, exactly the kind of dragnet condemned by both the Sixth Circuit and the Supreme Court.

The statement admits to a more narrow interpretation that the government intends to prove an agreement to raise capital (or funds) to import methamphetamine into Tennessee. This agreement is very similar to the agreement in *Gibbs* to exclude non-resident drug dealers from the Short North. *Gibbs*, 182 F. 3d at 422-423. Liability under both agreements would require more than the purchase from or sale of drugs to alleged co-conspirators and Mr. Uthe could defend himself by showing that he had not agreed to participate in an agreement to raise money to import methamphetamine into Tennessee or that there was a lack of evidence that he had. *Gibbs*, 182 F. 3d at 423 (holding that although alleged conspirators associated with one another and sold drugs to each other, there was no "evidence that any specific defendant agreed to participate in the conspiracy to exclude outsiders so as to further the drug sales of insiders."). Because the agreement is not alleged in the indictment, however, if Mr. Uthe were to focus his defense on disproving such an agreement, there is nothing to prevent the government from simply arguing a different agreement either to this court, to the jury or on appeal, which is exactly the type of situation that Supreme Court precedent forbids. E.g., *Russell*, 369 U.S. at 768.

**B. Possession of a firearm in furtherance of a drug trafficking offense:**

18 U.S.C. § 924(c) imposes criminal liability on "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." *Id.* The indictment in this case charges Mr. Uthe with possession of a firearm in furtherance of the conspiracy to distribute methamphetamine alleged in Count One. (Doc. 3, p. 15).

The Sixth Circuit construed the meaning of the "in furtherance of" limitation in *U.S. v. Mackey* and concluded that "that Congress intended the 'in furtherance of' limitation to be a higher standard than 'during and in relation to,' which continues to modify the use and carry prongs of the statute." *US v. Mackey*, 265 F. 3d 457, 461 (2001). The court also noted that the statute "does not [] cover all instances of possession of a firearm by a drug trafficker," but "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged." *Id.* at 462. The court concluded that:

> In light of Congress' intent that "in furtherance of" be a more stringent requirement than "during and in relation to," we emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.

*Id.* (internal citations omitted).

Count Twenty-Four admittedly is not nearly as infirm as the conspiracy counts, given the allegation in the indictment that the offense happened on a single identified date and given that the conduct proscribed by the statute is much more narrowly defined. However, the fact remains

that the elements of the offense are not set out fully in the statute, because under binding Sixth Circuit case law, a nexus must be proven between the gun and the crime charged, which is all the more important given that the crime in this case is conspiracy. This is a fact specific inquiry and not simply a legal term of art. Accordingly, the government was required to plead in addition to the statutory language "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." E.g., *McAuliffe*, 490 F.3d at 531. The indictment is insufficient, because it fails to do so.

## II.     Procedural Requirements

In recent years, members of the Supreme Court and legal practitioners of all ideologies have recognized the problem of "over criminalization and excessive punishment in the U.S. Code."     *Yates v. United State*s, 135 S. Ct. 1074, 1100 (2015) (Kagan, J. dissenting); see also, e. g ., P aul Larkin, *Regulation, Prohibition, and Ov ercriminalization: The Proper and Improper Uses of the Criminal Law*, 42 HOFSTRA L. REV. 745 (2014); Glenn Reynolds, *Ham Sandwich Nation: Due Process When Everything is a Crime*, 113 COLUM. L. REV. SIDEBAR 102 (July 8, 2013); see generally James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless*, 18 GREEN BAG 2D 347 (Summer 2015)[3] Many leading scholars locate the problem in lack of judicial power over the criminal law and therefore maintain that the "last, and probably best, solution is to increase judicial power over criminal law." William J. Stunz, *The Pathological Politics of Criminal Law*, 100 MICH. L. REV. 505, 508 (2001).

---

[3] Copy available at https://www.jonesday.com/why-dont-courts-dismiss-indictments-a-simple-suggestion-for-making-criminal-law-a-little-less-lawless-18-igreen-bagi-2d-347-09-01-2015/

There is nothing to suggest, however, that the Federal Rules of Criminal Procedure mandate a system that does not provide an effective mechanism for eliminating legally flawed criminal cases at the outset of the case and, therefore, grants unreviewable power to prosecutors to subject target individuals to full criminal trials, as well as lengthy pre-trial incarceration. E.g., James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless*, 18 GREEN BAG 2D 347 (Summer 2015). The Supreme Court has recognized the "potential cost" to civil defendants when legally flawed complaints are not dismissed, but these costs pale in comparison to the costs borne by criminal defendants. *Bell Atl. Corp. v. Twombly,* 550 U . S. 544, 559 (2007). A defendant indicted on a flawed legal theory is innocent, but must pay costs incalculably greater than a civil defendant, whose costs are limited to suffering the needless expense of the cost of discovery. The costs borne by criminal defendants are not simply monetary, although those costs can themselves be astronomical in legal fees, and expert and investigative expenses, which either must be borne by the defendant or by the tax payer. Unlike a criminal defendant, upon the service of a complaint, a civil defendant is not ripped away from her family and her life and thrown into a jail cell during the pendency of the case, sometimes for years, a cost, which is also borne by the taxpayer and for which in the absence of a constitutional violation, there is no compensation. In addition, forcing an innocent person to litigate the case to the conclusion of the trial, imposes severe emotional hardship, severe and sometimes irreparable reputational injury and imposes significant costs and demands on the judiciary. James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless*, 18 GREEN BAG 2D 347, 354 (Summer 2015)

Such a system is not, in fact, what the Federal Rules of Criminal Procedure provide. *Id.* at 354-7. Textually, the Federal Rules of Criminal Procedure parallel the Federal Rules of Civil Procedure. *Id.* Fed. R. Crim. P. 7(c)(1) requires that indictments contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged," which, if anything, is a more stringent standard of pleading than required by the civil rule on complaints: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, the absence of a requirement for facts in Fed. R. Civ. P. 8(a)(2) would provide far more support for a contention that the Rule requires only a recitation of the elements of the claim and a finding that those elements, if found, constitute a legally cognizable basis for relief. The specific requirement that an indictment contain "facts" by contrast would indicate a requirement beyond the mere legal recitation of the statutory elements.

The rules governing dismissals of indictments and complaints are similarly synched, with Fed. R. Crim. P. 12(b)(3)(B)(v) providing for the dismissal of an indictment for "failure to state an offense," and Fed. R. Civ. P. 12(b)(6) providing for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless,* 18 GREEN BAG 2d 347, 354 (Summer 2015). Moreover, nothing in the advisory notes for either rule suggests that the criminal rules are to be less stringent. *Id.*

In the civil context, the Supreme Court has interpreted Fed. R. Civ. P. 8 to require that the plaintiff's legal theory be sound and that the factual allegations supporting it be plausible. Thus, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause

of action will not do," nor "does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Accordingly, a complaint must "contain sufficient factual matter" to plausibly permit "the reasonable inference that the defendant is liable for the misconduct alleged. " *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Id.* at 356.

There is nothing in the text of the rules to suggest that Rule 7 was not meant to embrace similar requirements in the criminal context. Indeed, there is far more textual support in the criminal rules for such requirements, because not only does Fed. R. Crim. P. 7(c) specifically require a statement of the "essential facts constituting the offense charged," Fed. R. Crim. P. 12 provides for the dismissal of an indictment for "lack of specificity" in addition to for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B) (iii) and (v).

Although the U.S. Supreme has yet to decide the issue, the Court's cases do make clear that unless the issue involves a question of law (such as the definition of obscenity or attempt), indictments must "fairly inform[ ] a defendant of the charge against which he must defend" and "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117-18. The requirement to state the "facts and circumstances" should be read compatibly with the requirement that a civil plaintiff plead a sound legal theory and factually plausible allegations to support it.

There is no good (or fair) reason for protecting civil defendants, for whom money only is at stake, from legally and factually insufficient claims, while forcing criminal defendants, for

Page 14 of 17
Case 2:18-cr-00017-RLJ-CRW   Document 626   Filed 10/03/18   Page 14 of 17   PageID #: 2782

whom money, liberty and sometimes life itself are at stake, to litigate the case to its end. James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless,* 18 GREEN BAG 2d 347, 357-362 (Summer 2015) (providing an excellent and comprehensive analysis). As the forfeiture allegations in this case make clear, monetary liability is not limited to civil cases and in criminal cases can be far reaching. Moreover, whereas a sizable portion of federal civil defendants are corporations, wealthy individuals (or individuals with substantial insurance policies) and governmental entities, a sizable portion of criminal defendants are the poor, meaning that the costs in a criminal case are often borne by those least able to afford them (and by the tax payers).

Beyond the personal and financial costs, criminal defendants faced with threadbare and conclusory allegations suffer greater prejudice in their ability to effectively litigate the case. In a civil case, the parties may propound to each other interrogatories, requests for admissions and for production of documents and depose witnesses, including each other. This extensive discovery allows a civil defendant to ferret out the plaintiff's legal theory and the facts in support of it in a legally binding way and the ability to move for summary judgment provides the defendant with an additional opportunity to win dismissal of a legally and/or factually inadequate claim. Although there is a cost to this discovery, the cost is minuscule in comparison to not having it and being forced to construct a defense based upon a threadbare accusation and educated guesswork as to what legal theories and facts might be summoned in support of it. Discovery in criminal cases is extremely limited and in some cases is not available to the Defendant until during the trial. Conclusory allegations, such as in the indictment at issue, force the defendant to guess as to

the prosecution's legal theory and the facts in support, to in effect blindfolded, pull the arrow back and hope it hits the target.

Because of the lack of full discovery in a criminal case, the prejudice to a criminal defendant is greater than a to civil defendant and puts tremendous pressure on the defendant to plead guilty, whether the case has merit or not. The Supreme Court has recognized that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Twombly*, 127 S.Ct. at 1967. The pressure to plead guilty regardless of whether the case has merit is far greater for a criminal defendant faced not only with a terrifying accusation carrying with it the possibility of years in prison or even death, as well as potentially severe financial losses, but also with enormous litigation expenses, pre-trial incarceration and reputational injury.

As noted above, the indictment in this case contains only conclusory allegations without any showing of a sound legal theory or plausible facts to support it. Indeed, the indictment is utterly devoid of any facts in regard to Mr. Uthe. The Constitution requires that Mr. Uthe be provided notice of the charges against him, effective assistance of counsel and a fair opportunity to contest the charges in a fair trial. There is nothing fair about forcing Mr. Uthe to guess as to the government's legal theory and the facts that will be marshaled in its support and leaving the government free to simply change its legal theory and factual allegations, if Mr. Uthe is successful. For an excellent discussion, see James Burnham, *Why Don't Courts Dismiss Indictments? A Simple Suggestion For Making Criminal Law A Little Less Lawless,* 18 GREEN BAG 2d 347, 360-1 (Summer 2015). Such a situation is contrary to the Constitution, to the Rules of Criminal Procedure, to the precedents of the Sixth Circuit and the Supreme Court and to any standard of fair-

ness to allow a person a fair opportunity to defend himself against serious allegations of criminal conduct carrying with them a potential life sentence of incarceration.

## CONCLUSION

For the foregoing reasons, the indictment must be dismissed for failure to state an offense.

Respectfully submitted this the 3rd day of October, 2018.

      /s/T. Scott Jones__

T. Scott Jones
Gena Lewis
BANKS & JONES
2125 Middlebrook Pike
Knoxville, TN 37921
Office Phone: (865) 546-2141
Fax: (865) 546-5777

*Counsel for Defendant Edward Uthe*

## CERTIFICATE OF SERVICE

I, T. Scott Jones, counsel for Plaintiff hereby certify that on October 3, 2018, I served a copy of **Defendant's Motion to Dismiss for Failure to State an Offense** through CM/ECF which will serve all counsel of record.

      Respectfully submitted,

      /s/T. Scott Jones__